## INCOMPATIBILITY ON THE PART OF A WIFE WHICH A COURT WILL EXCUSE.

Common Pleas Court of Hamilton County.

WILLIAM SCHROEDER v. CHARLOTTE SCHROEDER.

Decided, October, 1914.

*Divorce and Alimony—Husband and Wife Growing Apart Through Superior Opportunities of the Husband—Resulting Incompatibility Not Ground for Divorce.*

Where a husband has prospered and begins to feel he has advanced to a higher place in life, and that his wife, absorbed in her household duties, has not kept pace with him, and as a consequence he treats her with less and less respect and confidence, and finally so irritates her by his conduct as to cause outbursts of temper on her part and behaviour toward him of which she had not theretofore been guilty, his prayer for a divorce on the grounds of neglect of duty and cruelty will be denied and alimony will be awarded to the wife.

*Charles M. Leslie* and *Charles E. McCarthy,* for plaintiff.
*Spangenberg & Spangenberg* and *Charles F. Hornberger,* contra.

COSGRAVE, J.

The petition in this case alleges that both plaintiff and defendant are residents of this state and were intermarried on or about the 6th day of December, 1904. There is one child living, Thelma Schroeder, aged about seven years, born of said marriage.

Plaintiff alleged that he has fulfilled all his marital obligations toward the defendant and has always conducted himself as a true and faithful husband, but that the defendant in violation of her obligations towards him, has been guilty of gross neglect of duty in that the defendant failed and neglected to perform her household duties properly, and to properly take care of the house which this plaintiff provided; that on numerous occasions she neglected to prepare said plaintiff's meals; that she had

no affection for said plaintiff and was very quarrelsome and irritable; that the defendant has also been guilty of extreme cruelty in that she continually quarreled with the said plaintiff and harrassed him by her language and by her actions, so that she made life miserable, causing him great mental suffering; that upon a number of occasions the defendant called said plaintiff names which propriety forbids being set forth. That on the 8th day of February, 1914, and at divers times prior thereto, the defendant threatened to kill plaintiff; that on the 16th day of April, 1914, the defendant forbid the said plaintiff to return to his home and threatened to do this plaintiff bodily harm if he ever returned to their home. Wherefore he asks to be divorced, and he asks for the custody of the minor child, and for such other relief as may be proper.

To this the defendant has filed an answer, in which she denies specifically and generally each and every allegation contained in said petition relating to her conduct towards her husband. By way of cross-petition she alleges that since the date of their marriage, to-wit, on December 6th, 1905, she has at all times fulfilled her marital obligations towards said plaintiff and conducted herself as became a true and faithful wife, but that said plaintiff, in violation and total disregard of his marital obligations towards her, has been guilty of conduct which brought about the present separation.

She alleges that for the past four years said plaintiff has exhibited a cold and indifferent manner towards her, indicating that he no longer had any affection for her, and that, on various occasions, said plaintiff has used improper language towards said defendant and has called her improper names. Defendant further alleges that this conduct on the part of said plaintiff became unbearable to her, the said plaintiff was never satisfied with anything that said defendant tried to do or did; that he would complain and criticise her on every occasion and would not give her a civil response to questions which she would ask him; that he complained about the meals which said defendant would prepare, and on many occasions, would denounce said defendant as being an improper person to have the control and bringing up of their said minor child.

Defendant further avers that this constant and mean conduct on the part of said plaintiff towards her, has caused her great humiliation and mental distress, and that by reason thereof, and owing to the ill-treatment as herein described, said defendant was forced to and did tell said plaintiff to leave the house on the 16th day of April, 1914.

Defendant further avers that she has, on frequent and numerous occasions, requested and begged said plaintiff to show a proper respect and affection for her, and has remonstrated with him about his conduct, but that said plaintiff has, at all times, ignored these entreaties and has been guilty of improper conduct towards her. Defendant further states that the separation was caused by the ill-treatment on the part of the said plaintiff, and further states that she is without any money or means with which to provide for herself and child with the necessaries of life.

She alleges the plaintiff's employment and earning capacity of $60 a week.

She alleges that the said plaintiff is the owner and holder of 150 shares of the Press Steel Car Company's capital stock, which company is a corporation, and that said stock has a par value of one hundred dollars per share; and that said plaintiff is also the owner and holder of ten shares of the capital stock of the Toledo Street Railway & Light Company, a corporation, of the par value of one hundred dollars per share.

She alleges that she is in fear that said plaintiff, or some one for him, may attempt to take possession of their said minor child, and that she, therefore, prays this court for an order enjoining said plaintiff from in any manner interfering with her or with her custody of said child.

Wherefore, defendant prays that upon the hearing hereof, the petition of the plaintiff may be dismissed; that she be granted reasonable alimony as well pendente lite as also permanent, upon the final determination of this cause, in addition to her attorney's fees; that the care, custody, education and control of their said minor child, Thelma, be confided to her solely and exclusively, and that said plaintiff be enjoined from

interfering with her or with her custody of said child, except under a reasonable and proper order of this court; and that he be enjoined from disposing of or in any manner encumbering the securities referred to herein, and also from drawing out any monies on deposit in his name in said Provident Savings Bank & Trust Company, and that said bank be enjoined from paying over to him any monies on deposit in his name, and for all proper general and equitable relief.

The pleadings are in effect substantially a charge of cruelty and gross neglect on the part of each of the parties herein. It appears from the testimony and from the pleadings that the parties were married on the 6th day of December, 1904. They have one child, Thelma, aged about seven years. It appears that at the time of said marriage the plaintiff was about ten years the senior of the defendant. They had known each other for a period of five years prior to the marriage; the courtship, ending in the marriage, covered a period of about two years. The plaintiff's sisters held him in very high esteem and deep affection, such as sisters very generally have for an only brother, but seemed to have a set aversion towards the defendant which manifested itself quite noticably prior to the marriage. However at, and after the time of marriage there was no marked exhibition of this aversion on the part of the husband's sisters toward the defendant, except as displayed by their failure to visit the home of the newly married couple, or to show her the respect due her as the wife of their brother.

At the time of their marriage, the husband had accumulated quite a snug little sum of money from his earnings as a machinist. He furnished a small but comfortable home in a manner commensurate with his means and station in life. The defendant was about eighteen years of age at the time of her marriage, and had worked in one of the mercantile stores of our city for some few years preceding her marriage. The husband appears to have been a good, clean, industrious, thrifty man; the wife, a good, wholesome, virtuous woman, possessing some fair degree of musical ability. There is no question whatsoever, in this case, of improper conduct on the part of either the

husband or the wife, as the world understands and judges improper conduct.   They seem to have led a fairly contented and happy life until about a year or so before the separation, which took place on April 16th, 1914.

There had been differences between them prior to this time, but of no very serious character, seemingly being but the result of somewhat differing temperaments.

During the hearing of this case, which occupied some three days, a great many witnesses were examined on each side.   The court will not attempt to review the testimony in detail, but will content itself with giving its effect on the judicial mind.   A number of differences were brought into evidence.   They were largely the resurrection of past incidents, which, at the time of their occurrence, were of no serious import, but when grouped together and presented to the consideration of the court, as grounds for a divorce, seemed of some moment until analyzed and placed in their true relationship as to the time and circumstances of their occurrence.

It is said that the wife occasionally used language which was designated as profane, and yet in the legal acceptance of the term it was not.   It was rather a harsh and unbecoming mode of expression occasionally indulged in by both parties to this action. The language used was not of the choicest and it is to be regretted that such was the case.   Conceding the truth of this charge, it does not furnish any sufficient grounds for dissolving the bonds of marriage.   The language used was seemingly due to tempermental outbursts provoked by occurrences and conditions that were probably very irritating and provocative of emphatic language.   It is true that the wife, and to a very great extent, if not always, joined therein by her husband, sought recreation and diversion in attending the moving picture theaters in their neighborhood, very generally going in each other's company and returning in the same manner, both equally enjoying these entertainments.   It is possible that there was an over-indulgence in this very general diversion of the people of our city.   It yet remains, however, for any court to say that such conduct tends in any way to constitute any ground for divorce under the laws of our state.

It appears that the husband was earning very good wages at the time of the marriage, and that they have doubled in amount, up to the present time, a tribute to his skill, ability and faithfulness in the performance of his duties. It would appear, however, that with increasing earning capacity, there was also an increasing exaltation of himself, until probably quite unconsciously, he arrived at that state of mind where he permitted himself to feel that he had reached such a superior sphere in life that by contrast caused his wife to appear inferior to him. This mental process quite often comes upon men who, by reason of intercourse in business affairs and with the world generally, acquire a greater breadth of knowledge and larger idea of life than the wife who is confined to her home by her household duties and the care of the family, and in times, she is made to, perhaps, feel that she does not measure up to the standards that her husband has reached. In the quickening developments of life prevailing at the present time, these conditions are becoming more and more frequent. In some jurisdictions, this change of conditions in the marital relations frequently designated as incompatibility, has been made the pretext for the granting of divorces; but so far as this court is concerned, it has not, and will not, adjudge any such state of affairs, of itself, to be a ground for divorce under the laws of our state. This court feels that when this condition arises, instead of the husband looking with disfavor upon the wife from his more seemingly favorable station, he should pull her up to his standard, or remain on an average standard with her so far as his domestic and family relations are concerned, whatever may be his attitude outside of his home.

A little incident occurring during the trial of this case has led this court to a fixed conviction that such is the case between this husband and wife, and this court is prepared to say in all candor, from his knowledge of human life and human affairs, that the husband who never permits himself to feel or to show any ground for the existence of a feeling of superiority as to his wife, or to make her feel that she is his inferior by reason of his increased business or seeming social success, prepares a

pathway for his future life paved with happiness and content-
ment both for himself and those around him.

Many little incidents brought into this case impressed the
court that the estrangement herein existing is largely due to
the above reason. The incident of the wife wanting to send
the little girl Thelma to the German Lutheran Sunday School,
and the husband wanting to send her to the Christian Church
Sunday School, was not a serious matter at all, because the
little girl would have been taught nothing but good in either
Sunday School, but is a strong illustration of the fact that both
parents were good people, and only differed in their method of
manifesting their goodness. The mother desired the child
brought up in the use of the German language, the language of
her sires, as also the sires of her husband; the father did not
seem to so desire. And so far as religious instructions are con-
cerned, the mother's wish should have prevailed. I think we
would have less use for the juvenile court if all the children of
our city were sent to Sunday School in their younger days, and
taught their duty to their God, according to whatsoever belief
their parents might profess.

There is a pathetic side to the domestic life of these people
that has impressed the court very deeply. It pertains to the
events immediately preceding the separation and the seeming
cause therefor, which, after all, is the only serious matter in this
case. The evidence shows that this wife, week after week,
brought her husband's earnings from their home in the extreme
northwestern part of the city into the heart of the city and
deposited the same in his name in one of the banks of our city;
that this was continued week after week, year after year, the
bank book remaining at all times accessible to both of them.
When we also consider that the husband commencing six months
after his marriage gave his pay envelope to his wife each week,
and after the birth of the baby and when it arrived at an age
that it was able to receive it from his hands, delivering it to
the little child and the little child to the mother, thus showing
on his part, love and affection for both, and the mother deposit-
ing as above stated, in an account in the husband's name, and

this continued until a few days before the separation, when for the first time in nearly nine years, without any word of explanation, he left the house without giving to his little child and wife his pay envelope, and when for the first time in their married life she was compelled to ask him for money for household expenses, and he crustily handed her a ten dollar bill out of sixty dollars, being one-sixth part of his weekly earnings for the care and maintenance of the home for himself, wife and child, it is not to be wondered at that this sudden and unexplained withdrawal of confidence and faith in her whom he had trusted all these years, caused an outburst of indignation, impelling resentment from the depths of her wounded heart. Is it surprising she threw the ten dollar bill at him as he was leaving the home? The court can not help but feel, as appears in evidence, that the disdainful glance, the contemptuous look, the slighting if not insulting words that he had been applying to her for the six or eight months preceding this event, produced a culminating effect on that day, and that the love chords uniting their two hearts were withered, if not broken, by this last act showing want of confidence in her honesty and good faith and without any reason therefor.

The court is not surprised that she resented it in the manner in which she did. If that morning, he had examined the family bank book and observed its growth from hundreds to thousands of dollars, his earnings it is true, but saved by her, he would not have acted as he did. It would have impressed him, as it did the court, not only as a silent tribute to his industry, but also to her thrift and economy.

If there was any cruelty in this case, it was cruelty on the part of the husband, and not on the part of the wife; if there was any gross neglect of duty, it was on his part and not on hers. By the testimony the plaintiff has utterly failed to make out a case against his wife, and the prayer of divorce on behalf of the husband will be denied.

When all is said and done, the court is in doubt whether the plaintiff fully realized the effect of his course of conduct towards the defendant. The custody of the child will be awarded to the

mother with the right to the father to visit at such times as may be agreed upon in the decree to be submitted herein. The husband will pay to his wife for maintenance and the maintenance of the child, the sum of $25 per week until the further order of this court, and pay an attorneys' fee of $250 to Messrs. Spangenberg and Hornberger, as counsel for defendant, for services rendered since the beginning of this action.

The court will not now make a final disposition as to the alimony to be awarded to the wife in gross, but will delay the same,

I delay final disposition in the case for the reason that it would be very pleasing to this court if the husband and wife would both take counsel with their best selves and agree to forget and forgive some of the past disagreements, not only for their own sakes, but for the sake of their beautiful little daughter, Thelma, agreeing to live together again; and believe me in so doing, you will find in the years to come a greater degree of happiness than if you continue in your present state of disagreement. This may be a vain hope on the part of the court, but while there is a hope, the court will cling to it. I believe from what I have observed during the trial, that at the time of your marriage, you truly and sincerely loved each other and continued to do so until at least a year before your estrangement. I believe that love exists between you still, somewhat dimmed it may be, but not extinguished. You are both good people: rekindle its fires before it is too late.